Michael W. HOOPER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0203–CR–115.

Court of Appeals of Indiana.

Dec. 9, 2002.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

### STATEMENT OF THE CASE

Michael W. Hooper appeals his convictions for trespass, a class A misdemeanor, and resisting law enforcement, a class D felony, and the finding that he is an habitual offender.

We affirm in part, and reverse in part.

### ISSUES

1. Whether the trial court erred by admitting evidence after the State failed to provide full discovery prior to trial.

2. Whether the trial court erred by allowing testimony by a police officer regarding past interactions with Hooper in violation of Indiana Evidence Rules 403 and 404(b).

3. Whether the trial court abused its discretion by permitting the State to file an habitual offender enhancement approximately four months after the omnibus date.

### FACTS

At about 3:00 a.m. on September 3, 2000, Officer Mark Perry of the Evansville Police Department ("EPD") saw Hooper in the back parking lot of the Old National Bank in Evansville. Prior to Officer Perry's September encounter with Hooper, the branch manager of Old National Bank, Jeff Johnson, had executed an agreement with EPD requesting that EPD police officers enforce no trespassing/no loitering signs located on Old National's property. Officer Perry showed Hooper the no trespassing signs and told Hooper to leave. Officer Perry told Hooper not to return to the property. Later, Hooper admitted that he should not have been on the property.

On April 6, 2001, Officer Perry was on duty when he saw Hooper driving a motorcycle. Officer Perry believed that Hooper's driver's license was suspended, but a check revealed that Hooper's license had, in fact, expired and that he did not have a motorcycle endorsement. Because Hooper was traveling in the opposite direction, and because traffic was heavy, Officer Perry did not attempt to stop Hooper at that time.

Approximately two hours later, at 6:00 p.m., Officer Perry again saw Hooper driving the motorcycle. Hooper was stopping in traffic, requiring cars behind him to stop, then revving the engine and starting quickly. Officer Perry circled around and drove through the bank parking lot. He saw Hooper drive into the bank parking lot. Officer Perry activated his emergency lights. Hooper, who was not wearing a helmet or head covering, stopped within seven or eight feet of Officer Perry's car. As Officer Perry was getting out of his car, he "made a motion with [his] finger for [Hooper] to come here." (Tr. 49). When Officer Perry reached the hood of his car, Hooper "smiled real big ... and took off." *Id.* Officer Perry testified that Hooper was on the bank property for approximately 30 seconds.

Officer Perry testified at trial that he could identify Hooper based upon his previous encounters with Hooper based upon a distinctive feature—a gap between Hooper's front teeth. Officer Perry elaborated

by reiterating that he had seen Hooper in September 2000 on the bank property, and that he had had two or three other encounters with Hooper. Hooper objected on the grounds that other encounters would be perceived by the jury as "some type of bad act evidence." (Tr. 52). Hooper asked for a mistrial. Finding that the evidence of other interaction would be "neutral," the trial court overruled the objection and denied the motion for a mistrial.

On April 10, 2001, Officer Perry filed charges against Hooper and a probable cause affidavit attesting to the events on April 6, 2001. The Chronological Case Summary ("CCS") discloses that the original omnibus date was July 2, 2001. The CCS reveals that the omnibus hearing was rescheduled twice.

On November 6, 2001, the State sought to file an habitual offender enhancement. Hooper objected to the late filing of the enhancement, but did not request a continuance. The trial court allowed the amendment to include the habitual offender enhancement. Counsel for Hooper confirmed with the court that Hooper would be prepared for the jury trial set to commence two days later.

However on November 8, 2001, counsel for Hooper reported to the trial court that Hooper had been arrested on a new charge "overnight." (Appellant's App. 7). Based upon Hooper's new arrest, the jury trial in the present case was rescheduled for January 10, 2002.

As noted above, the jury returned guilty verdicts for both trespass and resisting law enforcement. Also, in a bifurcated proceeding, the jury determined that Hooper was an habitual offender.

### DECISION

1. *Discovery Violation*

Hooper contends that the trial court erred by permitting the State to admit evidence after the State failed to provide full discovery—specifically, pictures of the no trespassing/no loitering signs and the document signed by Johnson requesting that EPD enforce the signs—until the day of trial. Hooper acknowledges that no formal discovery request was made, but that the informal process was undermined by the State's failure to provide the discovery until the day of trial. Hooper urges that the failure to provide discovery amounted to prosecutorial misconduct.

Trial courts enjoy broad discretion with regard to rulings on discovery matters based upon the courts' duties to promote discovery of the truth and to guide and control the proceedings. *Dye v. State*, 717 N.E.2d 5, 11 (Ind.1999). On review of discovery matters, this court recognizes that the trial court is in the best position to assess the effect of discovery violations. *Gardner v. State*, 724 N.E.2d 624, 627 (Ind.Ct.App.2000), *trans. denied*. Accordingly, we will reverse a ruling on discovery matters only when clear error occurs. *Id.* "[T]he appropriate standard of review in all instances of prosecutorial failure to disclose evidence ... [is whether] ... 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different.'" *Gardner*, 724 N.E.2d at 627 (quoting *Lyons v. State*, 600 N.E.2d 560, 564 (Ind.Ct.App.1992)). "When remedial measures are warranted, a continuance is usually the proper remedy...." *Dye*, 717 N.E.2d at 11.

Hooper acknowledges that no discovery order was in place and that he is not asserting that the State's conduct was intentional, but he insists that the informal discovery process was thwarted here because of the State's misconduct. A court reviewing an allegation of prosecutorial

misconduct considers "first whether the prosecutor committed misconduct and second, whether the alleged misconduct placed the defendant in a position of grave peril." *Robinson v. State*, 693 N.E.2d 548, 551 (Ind.1998). The gravity of the peril is measured by the probable persuasive effect on the jury's decision, not the degree of the impropriety. *Id.*

■ At a bench conference on motions at the beginning of Hooper's trial, the State informed the court that Hooper had just been given the agreement between the bank and EPD requesting that EPD enforce the no trespassing/no loitering signs on the bank parking lots, as well as eight photographs of the signs. The State explained that the agreement had been in possession of EPD, but was "faxed to [the State] today." (Tr. 12). The State acknowledged that discovery should have been provided earlier, but argued that the agreement constituted documentary evidence as an adjunct to the testimony that Officer Perry would be giving that such an agreement was in place. As to the photographs, the State acknowledged that they were taken on the day before trial. The State acknowledged Hooper's objection that the photographs did not depict the scene precisely as to lighting and the vehicles on the lots at the time Hooper was charged, but the State argued that they were demonstrative evidence to support the testimony Officer Perry would be giving that the signs were in place at the time Hooper committed the acts in question. As to the agreement and the photographs, the State argued that Hooper should not have been surprised by the existence of documentary evidence that would support Officer Perry's testimony.

The trial court stated that it would not entertain a motion for a continuance. The trial court ruled that the foundational requirements for admission remained an is-sue during the trial, but that the evidence would be admissible despite late disclosure to Hooper. Hooper was given an opportunity to review the materials before the testimony commenced.

Over Hooper's objection, the exhibits were admitted during the testimony of Johnson, the bank manager. Officer Perry referred to the exhibits during his testimony.

We in no way condone the late disclosure of discovery materials, in a formal or a cooperative discovery setting; however, the late disclosure in the present case did not have a bearing on the outcome of the jury's decision. Both the bank manager and Officer Perry testified as to the existence of the signs and the agreement. The existence of the agreement and the signs were not a surprise to Hooper. The trial court's ruling allowing Hooper an opportunity to examine the exhibits, prior to any testimony in the trial, was not clearly erroneous.

### 2. *Prior Interactions Evidence*

Hooper contends that the trial court abused its discretion by allowing Officer Perry's testimony that he could identify Hooper based upon previous interactions with Hooper. Hooper alleges that the testimony amounted to improper evidence of bad character in violation of Indiana Evidence Rules 403 and 404 because the jury would be left with the impression that a police officer's interactions with someone would be for violations of the law.

■ The admissibility of evidence lies within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Johnson v. State*, 722 N.E.2d

382, 383 (Ind.Ct.App.2000). Rule 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Our supreme court has set forth the following standard for assessing the admissibility of Rule 404(b) evidence:

> (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. When inquiring into relevance, the court may consider any factor it would ordinarily consider under Rule 402.

*Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997).

█ In the present case, Hooper objected when Officer Perry stated that he could identify Hooper as the motorcycle driver because he had had two or three other encounters with Hooper. Officer Perry did not elaborate as to the context of the encounters. Assuming *arguendo* that the testimony can be characterized as evidence of bad character or some prior misconduct, the trial court did not abuse its discretion by allowing the testimony because it was merely cumulative of other evidence from Officer Perry to which Hooper did not object.[1]

█ Before the testimony to which Hooper objected, Officer Perry testified that he had spoken to Hooper in September 2001 about not trespassing on the bank's property and that Hooper had acknowledged that he should not be on the property. That testimony was admitted without objection by Hooper. "Evidence that is merely cumulative is not grounds for reversal." *Tobar v. State*, 740 N.E.2d 106, 108 (Ind.2000). The testimony to which Hooper objected was cumulative of Officer Perry's specific testimony regarding a previous encounter with Hooper. As such, the trial court did not abuse its discretion by allowing the testimony.

### 3. Habitual Offender Enhancement

Hooper contends that the trial court erred by permitting the State to file an habitual offender enhancement almost seven months after the charging informations were filed and four months after the original omnibus hearing date.

█ Pursuant to Indiana Code Section 35–34–1–5, an amendment to an information in order to include an habitual offender enhancement "must be made not later than ten (10) days after the omnibus date." *Kidd v. State*, 738 N.E.2d 1039, 1041 (Ind. 2000) (quoting I.C. § 35–34–1–5). "Upon a showing of good cause, however, the court may permit the filing of an habitual offender charge at any time before the commencement of the trial." *Williams v. State*, 735 N.E.2d 785, 789 (Ind.2000). "Once the omnibus date is set, it remains the omnibus date for the case until final disposition," unless specific statutory factors are met. Ind.Code § 35–36–8–1(d); *see also Sappenfield v. State*, 462 N.E.2d 241, 243–44 (Ind.Ct.App.1984) (original omnibus date remains same even if omnibus hearing is continued).

---

1. Although our resolution obviates the need to address the argument, the State correctly notes that Hooper placed his identity at issue; thus, the probative value of the evidence to prove identity outweighs the potential harm to Hooper. *See* Evid. R. 403.

As noted above, the omnibus date was July 2, 2001. On November 6, 2001, the State sought to amend the charges by filing an habitual offender enhancement. Hooper objected. The State asserted that the filing would comport with the time limits within the rule, *i.e.,* "ten days after the omnibus date." (Tr. 7).

While it is true that the rescheduled omnibus *hearing* was set for November 5, 2001, the November 2001 amendment did not comport with the 10–day rule because the original omnibus *date* was in July. The State did not offer any showing of good cause for the late filing. *See Williams,* 735 N.E.2d at 789. Accordingly, the trial court erred by allowing the late filing of the habitual offender enhancement.

The judgments of conviction are affirmed, but the habitual offender enhancement is reversed.

BROOK, C.J., and KIRSCH, J., concur.

**J.J.M., Appellant–Defendant,**