**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DANIEL J. MOORE**
Lasynski & Moore
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 14 2012, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA


MICHAEL T. HACKWORTH,          )
                               )
    Appellant-Defendant,       )
                               )
        vs.              )     No. 79A02-1106-CR-526
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.        )


APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1008-FA-21


**February 14, 2012**


**MEMORANDUM DECISION – NOT FOR PUBLICATION**


**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Michael T. Hackworth (Hackworth), appeals his conviction for two Counts of dealing in cocaine as Class A felonies, Ind. Code § 35-48-4-1, and for being an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUES

Hackworth raises two issues on appeal, which we restate as follows:

(1) Whether there was sufficient evidence that Hackworth committed two Counts of dealing in cocaine as Class A felonies; and

(2) Whether the trial court erred when it allowed the State to file a belated habitual offender charge against him.

## FACTS AND PROCEDURAL HISTORY

Natalie Lovett (Lovett) worked as an undercover police officer for the Lafayette Police Department. On June 17, 2010, Lovett was introduced to Hackworth and two other females in reference to purchasing crack cocaine. Hackworth asked Lovett if she could drive him to Danville, Illinois in order to purchase cocaine, but Lovett declined his request. Following this meeting, though, Hackworth called Lovett, and she returned his call on June 29, 2010. Lovett recorded the June 29 phone call in which she asked Hackworth for a "bill," which is a slang term for one hundred dollars worth of cocaine. Hackworth told her that he had that amount of cocaine available to sell, and they arranged an exchange to occur that same day at an apartment located at 2012 Banstead Court in

2

Lafayette, Indiana. Lovett fitted herself with a body wire and met Hackworth at the apartment to make the exchange.

When Lovett arrived at the apartment, Hackworth first asked Lovett if she wanted a "swing," which is a slang term for smoking cocaine. (Transcript p. 48). Lovett declined his offer and handed him her money. In exchange, Hackworth spit two plastic knotted baggies out of his mouth and gave them to her. Lovett returned to her office and determined that the baggies weighed 0.7 grams and tested positive for cocaine.

Half an hour later, Lovett called Hackworth again, asking if he had another bill. Hackworth did not have the bill immediately available but called someone else and obtained it. Hackworth subsequently arranged to meet Lovett near a local Village Pantry. When Lovett reached the store, Hackworth walked up to her car and spit two plastic baggies out of his mouth in exchange for one hundred dollars. Lovett returned to her office and found that the substance in the plastic baggie again tested positive for cocaine.

On July 19, 2010, Lovett contacted Hackworth asking for another bill of cocaine. Lovett drove to Ironwood Apartments in Lafayette, picked up Hackworth, and then drove to 18th Street and Perrine Avenue. This location was about 515 feet from Stonecrest Apartments, 670 feet from Murdock Elementary School, and within 1,000 feet of a park. The school was closed and not in session, but approximately 29 children lived within 1,000 feet of the exchange, and approximately three to five children lived in Stonecrest Apartments. The park was closed, and no one saw children in the park.

3

Hackworth did not have the cocaine, so Lovett gave him one hundred dollars and he exited the vehicle to obtain the drugs from someone else. Hackworth returned to Lovett's car after approximately five minutes and gave her a plastic baggie out of his mouth. Lovett drove Hackworth back to Ironwood Apartments and returned to her office to field test the substance in the plastic baggie. She determined that it was positive for cocaine and weighed 0.6 grams.

On August 9, 2010, Detective Bradley Curwick (Detective Curwick) of the Tippecanoe County Drug Task Force contacted Hackworth, stating that he was dating Lovett and that he wanted Hackworth to "help [him] out." (State's Exhibit 18a). Hackworth called Lovett to verify Detective Curwick's story, then returned Detective Curwick's call and arranged to sell him a bill of cocaine near the Banstead Court Apartments.

The exchange took place at the intersection of 17th Street and Underwood Street, less than 1,000 feet away from Banstead Court Apartments. On the date of the exchange, August 9, 2010, approximately 22 children lived in the apartments. After the exchange, Detective Curwick and Hackworth split up and went separate ways. Officers Brian Gossard (Officer Gossard) and Brandon Withers (Officer Withers) observed Hacksworth walk back toward his apartment from their vehicle, then exited their vehicle, identified themselves as police, and ordered him to the ground. Hackworth ran away, but the Officers caught up with him and knocked him to the ground. While on the ground, Hackworth clenched his fist. Officer Gossard kept Hackworth's hand pinned out of fear

4

that he would attempt to destroy evidence. After the Officers handcuffed Hackworth, they opened his fist and found the money from the transaction.

On August 16, 2010, the Stated filed an Information charging Hackworth with Count I, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; Count II, possession of cocaine, a Class B felony, I.C. § 35-48-4-6; Count III, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; Count IV, possession of cocaine, a Class B felony, I.C. § 35-48-4-6; Count V, dealing in cocaine, a Class B felony, I.C. § 35-48-4-1; Count VI, possession of cocaine, a Class D felony, I.C. § 35-48-4-6; Count VII, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; Count VIII, possession of cocaine, a Class B felony, I.C. § 35-48-4-6; and Count IX, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44-3-3. On September 9, 2010, the State filed a notice of its intention to file an habitual offender enhancement as Count X. On November 9, 2010, the Stated filed Count X, alleging that Hackworth was an habitual offender pursuant to I.C. § 35-50-2-8. Then, on February 4, 2011, the State amended Count X. On February 21, 2011, the State also filed the following amended Counts: Count I, unlawful sale of a legend drug, a Class D felony, I.C. § 16-42-19-11; Count II, possession of a legend drug, a Class D felony, I.C. § 16-42-19-13; Count III, dealing in cocaine, a Class B felony, I.C. § 35-48-4-1; Count IV, possession of cocaine, a Class D felony, I.C. § 35-48-4-6; Count V, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; Count VI, possession of cocaine, a Class B felony, I.C. § 35-48-4-6; Count VII, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; and Count VIII, possession of cocaine, a Class B felony, I.C. § 35-48-4-6.

5

On April 5-7, 2011, a jury trial was held. At the conclusion of the trial, Hackworth was found guilty as charged, and the trial court entered judgments against him on Counts I, III, V, VII, and IX. Next, the trial court addressed Hackworth's habitual offender charge in a bifurcated phase of the proceedings. Hackworth waived his right to a jury trial, and the trial court found him to be an habitual offender. On May 18, 2011, the trial court sentenced Hackworth to three years imprisonment for Count I, twenty years for Count III, thirty-five years for Count V, thirty-five years for Count VII, and one year for Count IX, with sentences to run concurrently. The trial court also enhanced Hackworth's sentence by thirty years for Hackworth's habitual offender charge, for a total of sixty-five years imprisonment with ten years suspended.

Hackworth now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Sufficiency of the Evidence*

Hackworth first contends that the State did not provide sufficient evidence to convict him of two Counts of dealing in cocaine as Class A felonies instead of Class B felonies. Both Counts were enhanced to Class A felonies because of the allegation that the offenses occurred within 1,000 feet of a school or a family housing complex. To convict a defendant of dealing in cocaine, the State must prove that the defendant

> (1) knowingly or intentionally:
>     (A) manufacture[d];
>     (B) finance[d] the manufacture of;
>     (C) deliver[ed]; or
>     (D) finance[d] the delivery of;
> cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II.

6

I.C. § 35-48-4-1. To enhance that offense to a Class A felony, the State must prove that the defendant "manufactured, delivered, or financed the delivery of the drug: . . . (B) in, on, or within one thousand (1,000) feet of: (i) school property; (ii) a public park; (iii) a family housing complex; or (iv) a youth program center." I.C. § 35-48-4-1. However, a defendant may raise a defense to such an allegation if he or she was only "briefly in, on or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center; and [] no person under eighteen (18) years of age at least three (3) years junior to the [defendant] was in, on, or within one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense." I.C. § 35-48-4-16.

In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of witnesses. *Perez v. State,* 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied.* In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.* We will only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.* at 212-13.

Hackworth argues that he did raise the defense and that there was not sufficient evidence to support his conviction for dealing in cocaine as a Class A felony rather than a Class B felony. In support of his argument, Hackworth directs us to *Harrison v. State,* 901 N.E.2d 635 (Ind. Ct. App. 2009), *trans. denied.* In *Harrison*, an undercover officer conducted an investigation at the Wheeler Mission in Indianapolis in response to

7

complaints that a woman was dealing cocaine near the mission. *Id.* at 637-38. The officer asked Harrison if he knew where the woman was and then told Harrison that he was looking for $20 worth of cocaine. *Id.* at 638. Harrison told the officer that he could help him out and then walked a block away from the Wheeler Mission and gave the officer two bags of cocaine in exchange for $20. *Id.* Harrison was later convicted of dealing cocaine within 1,000 feet of a public park as the exchange had occurred within 703 feet of University Park in Indianapolis. *Id.*

On appeal, Harrison argued that the State had failed to introduce sufficient evidence that he was within 1,000 feet of a public park at the time of the transaction. *Id.* at 639. We reversed Harrison's conviction for Class A dealing in cocaine and remanded with instructions for the trial court to reduce the conviction to a Class B felony and resentence Harrison. *Id.* at 643. Our reasoning was that the jury could reasonably infer that Harrison was only briefly within 1,000 feet of the park because even though the entire undercover operation took thirty minutes—beginning at the Wheeler Mission—and Harrison walked with the undercover officer to a point 703 feet from University Park, the State did not prove that Wheeler Mission was within 1,000 feet of University Park. *Id.* Accordingly, the State did not establish the length of time that Harrison was actually within 1,000 feet of University Park. *Id.*

The supreme court addressed a similar issue in *Griffin v. State,* 925 N.E.2d 344 (Ind. 2010). Griffin was pushing a moped down the middle of the street at 2:15 a.m. when he was stopped by an officer investigating moped thefts. *Id.* at 345. The officer

8

attempted to move the moped off of the road and observed a plastic bag containing a white cake rocklike substance that was later determined to be 0.77 grams of cocaine. *Id.* The officer's stop occurred immediately adjacent to a chain link fence surrounding an elementary school, but the officer did not see any children at that time on or near the property. *Id.* Griffin was arrested and convicted of possession of cocaine within 1,000 feet of school property. *Id.*

Griffin appealed his conviction, and the supreme court clarified that the definition of "briefly" varies according to the purpose of the defendant's presence within the 1,000 foot proscribed zone. *Id.* at 349. Specifically,

> when a defendant's presence in the proscribed zone is primarily for a purpose other than illicit drug activity, the risk to children is smaller and the word "briefly" could encompass a greater duration of time. One example of this would be the traversing within a proscribed area without tarrying but while in concealed, illegal possession of drugs. On the other hand, when the principal purpose of the defendant's presence in the zone is to actively engage in criminal drug activity, especially if such activity is visible to any children, even a relatively short intrusion into the proscribed zone would be more than "brief" and thus should not excuse the defendant from the enhancement.

*Id.* Based on this standard, the *Griffin* court concluded that Griffin's presence within 1,000 feet of the school was brief, as his primary purpose was to push the moped down the street rather than to commit illicit drug activity; also, the court noted that his criminal activities would not have been visible to children if they had been present. *Id.* at 350.

In light of *Harrison* and *Griffin,* we agree with the trial court that the State provided sufficient evidence that Hackworth's presence within 1,000 feet of an elementary school, a public park, and a family housing complex was not "brief" during

9

his third and fourth drug transactions. Unlike *Harrison,* the State here established the length of time each drug exchange occurred within the 1,000 foot proscribed zone. With respect to the third transaction, Hackworth directed Lovett to drive to 18th Street and Perrine Avenue, which was an intersection located 515 feet from Stonecrest Apartments, a family housing complex; 670 feet from Murdock Elementary School; and within 1,000 feet of a public park. Hackworth initiated the drug exchange by taking $100 from Lovett, then directed Lovett to wait for him in that location while he obtained the drugs. Hackworth was gone for approximately four to five minutes and returned to the car to complete the drug transaction. As the purpose of this entire exchange was to actively engage in criminal drug activity, we recognize the supreme court's interpretation that even a relatively short intrusion into the proscribed zone can be more than "brief" in light of I.C. § 35-48-4-16(b). Therefore, we conclude that five minutes, although a short amount of time, was not "brief." Thus, there was sufficient evidence that Hackworth committed dealing in cocaine as a Class A felony with respect to his third drug transaction.

Likewise, Hackworth dealt cocaine in a five-minute drug exchange within 1,000 feet of a family housing complex during his fourth drug exchange. Hackworth does not dispute that the transaction was approximately five minutes long, that the Banstead Court Apartments is a family housing complex, or that his primary purpose was to engage in illicit drug activity. Accordingly, we conclude that five minutes was not "brief" for the purposes of interpreting I.C. § 35-48-4-16(b), using the same reasoning as above.

10

Finally, because we have determined that Hackworth's transactions were not "brief," we will not address the second prong of the defense listed in I.C. § 35-48-4-16(b), that there were not any children on the premises during the transactions. Instead, we conclude that there was sufficient evidence to establish beyond a reasonable doubt that Hackworth committed two Counts of dealing in cocaine as Class A felonies.

## II. *Habitual Offender Charge*

Next, Hackworth argues that the trial court abused its discretion when it allowed the State to file and amend an untimely habitual offender charge against him. I.C. § 35-34-1-5(e) states: "An amendment of an indictment or [I]nformation to include a[n] habitual offender charge under [I.C. §] 35-50-2-8, [I.C. §] 35-50-2-8.5, or [I.C. §] 35-50-2-10 must be made not later than ten (10) days after the omnibus date." The trial court's August 16, 2010 Order set the omnibus date for October 4, 2010. However, the State did not file its habitual offender charge until November 9, 2010. The State also filed petitions to amend the habitual offender Count on February 4, 2011, prior to the trial, and on April 7, 2011, just prior to the parties' closing arguments during trial.

We cannot agree with Hackworth that the trial court abused its discretion in allowing the belated filing of the charge. We have previously noted that the purpose of I.C. § 35-34-1-5(e) is to allow a defendant sufficient time to prepare a defense for an habitual offender charge. *Land v. State,* 802 N.E.2d 45, 53 (Ind. Ct. App. 2004), *trans denied.* Towards that end, section 35-34-1-5(e) also provides that the trial court may permit the filing of an habitual offender charge at any time before the commencement of

11

trial "upon a showing of good cause." Also, a defendant must show that he or she was prejudiced by the belated filing. *Jackson,* 938 N.E.2d at 39.

Once a trial court finds good cause, we review that decision for an abuse of discretion. *Id.* And abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* The trial court is not required to enter a specific finding concerning good cause, and we will determine that the trial court impliedly found good cause if it permits the State to file an habitual offender Count. *Jackson v. State,* 938 N.E.2d 29, 39 (Ind. Ct. App. 2010), *trans. denied.*

Here, Hackworth argues that the trial court never required the State to show good cause for its belated habitual offender finding. We cannot find any support for this claim in the transcript. Hackworth's counsel directly raised the issue of the belated finding at trial, and the trial court asked the State for a reply argument. In response, the State submitted evidence that Hackworth had received notice of the State's intent to file the charge on September 9, 2010, prior to the omnibus date. The trial court also commented that it "[knew] that there [had] been plea negotiations going on after the omnibus date and subsequent to [] the filing." (Tr. p. 418). From this evidence, it is clear that the trial court did require the State to show good cause and did consider the issue.

In addition, we find that the State's evidence was sufficient for a showing of good cause. Hackworth received notice of the State's intent to file the habitual offender charge before the omnibus date and, therefore, had the opportunity to prepare a defense to the charge. Also, the State filed the charge on November 9, 2010. While this filing was past

12

the October 4, 2010, omnibus date, it was still months prior to Hackworth's April 2011 trial. Moreover, in *Land* we noted that evidence of ongoing plea negotiations may constitute good cause for a belated habitual offender filing. *Land*, 802 N.E.2d at 53. Thus, we conclude that there was good cause for the belated filing and it did not prejudice Hackworth.

Hackworth also argues that the trial court abused its discretion when it allowed the State to amend the habitual offender charge on February 4, 2011 and on April 7, 2011. This argument is misplaced. Amendments to habitual offender charges are governed by I.C. § 35-34-1-5(c) rather than I.C. § 35-34-1-5(e). *Williams v. State,* 735 N.E.2d 785 (Ind. 2000). Pursuant to I.C. § 35-34-1-5(c), "[u]pon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or [I]nformation in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Hackworth failed to present any evidence that the amendments prejudiced his substantial rights.

Instead, we conclude that the trial court did not abuse its discretion when it allowed the State to file a belated charge that Hackworth was an habitual offender.

CONCLUSION

Based on the foregoing, we conclude that: (1) the State produced sufficient evidence to prove beyond a reasonable doubt that Hackworth committed dealing in cocaine as a Class A felony; and (2) the trial court did not abuse its discretion when it allowed the State to file a belated charge that Hackworth was an habitual offender.

13

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur