Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Dec 28 2012, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK SEXTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1204-CR-282 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Stanley E. Kroh, Judge Pro Tempore
Cause No. 49G03-1107-FB-52385

**December 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Mark Sexton appeals his habitual-offender enhancement after his felony convictions. He contends the trial court abused its discretion in allowing the State to file the habitual-offender information more than ten days after the omnibus date and there is insufficient evidence that he is a habitual offender. Finding that the trial court did not abuse its discretion in finding good cause in the State's delay in filing the habitual-offender information and there is sufficient evidence that Sexton is a habitual offender, we affirm.

**Facts and Procedural History**

In July 2011, A.J. was living in Indianapolis with her boyfriend. The two broke up in mid-July, and A.J. moved out and stayed with her father and step-mother for a few days. Since her father had only a studio apartment, A.J. kept looking for a different place to live. She decided to contact Sexton, her uncle, and he agreed to let her stay with him. Sexton picked A.J. up on July 23, and it was only then that A.J. learned that Sexton no longer lived with his wife. The two ran errands together before going to Sexton's home – they went to the laundromat, to buy groceries, and to buy alcohol. A.J. also purchased Vicodin "off of somebody off the street." Tr. p. 80.

That night, A.J. and Sexton drank alcohol and snorted Vicodin, and A.J. saw Sexton take some Klonopin, too. A.J. began to feel tired and sick, so she went to bed. They had previously decided that A.J. would sleep on the couch, but Sexton said that A.J. could sleep in his bed and he would sleep on the couch. A.J. changed into a tank top and shorts and fell asleep in Sexton's bed.

2

In the middle of the night, A.J. awoke to find that Sexton had removed her clothes and was naked on top of her. Sexton told A.J. she was beautiful, he knew she was his niece and he knew it was wrong, but he was attracted to her. A.J. started to cry and told Sexton she did not want him to do this. Sexton "jammed his fingers" into A.J.'s vagina, *id.* at 89, and then put his mouth on her vagina and licked it. *Id.* at 90. He rubbed his penis on her vagina, but he was unable to get an erection so he did not actually complete the act of intercourse. *Id.* at 91-92.

A.J. told Sexton that she needed to go to the bathroom, so he let her leave the bedroom. While in the bathroom, A.J. noticed that she had blood coming from her vagina. *Id.* at 92-93. A.J. waited in the bathroom for fifteen to twenty minutes and then slowly walked out, noticing that Sexton was asleep on the bed. A.J. quickly gathered her clothes into her laundry basket, but she accidentally left the basket behind when she left the house. She took Sexton's keys and drove to a nearby gas station where she called her friend, Andrew Clayton, and asked him to come pick her up. When Clayton arrived, A.J. told him she had been assaulted by a relative; she was "hysterical" and looked "as if she had seen a ghost." *Id.* at 151. Clayton followed A.J. back to Sexton's house so she could pick up her clothes. Clayton did not go inside Sexton's house, but he stayed on the phone with A.J. while she went inside. When A.J. came outside, Clayton called the police, and IMPD Detective Laura Smith came to the scene. Detective Smith took A.J. to St. Francis Hospital where A.J. had a sexual assault exam. Sexton was taken to Wishard Hospital for an exam.

The State charged Sexton with two counts of Class B felony criminal deviate conduct, Class B felony attempted rape, and Class C felony incest. The State sent a plea offer to Sexton, and indicated that if he were to accept the offer, a habitual-offender enhancement would not be filed. Sexton responded with a counter-offer two weeks later.

At the pre-trial conference on September 15, 2011, Sexton told the trial court that he was considering the State's offer and that he understood that if he rejected the plea agreement, the State would file the habitual-offender enhancement. The omnibus date was also extended to November 15, 2011, at that time. Four months later, Sexton's counsel sent an email to the State, asking whether it would consider a plea to sexual battery. That same day, the State replied that it could not agree to that plea and also informed Sexton that it would be filing the habitual-offender enhancement as had been previously discussed.

On February 2, 2012, the State moved to amend the information by adding the habitual-offender enhancement. The trial court granted the motion over Sexton's objection after a hearing. About a month later, a jury trial was held, and Sexton was found guilty on all counts. Sexton waived his right to a trial by jury on the habitual-offender enhancement, and the trial court found that he was a habitual offender.

At sentencing, the trial court vacated Sexton's Class C felony incest conviction due to double-jeopardy concerns. It then imposed eighteen years on each of the three remaining counts and ordered that they be served concurrently. The trial court then enhanced the first count of Class B felony criminal deviate conduct by sixteen years due to Sexton's habitual-offender enhancement.

4

Sexton now appeals.

## Discussion and Decision

Sexton raises two arguments on appeal: (1) the trial court abused its discretion in allowing the State to file the habitual-offender information more than ten days after the omnibus date and (2) there is insufficient evidence that Sexton was a habitual offender.

## I. Habitual-Offender Enhancement

Sexton contends that the trial court abused its discretion in allowing the State to file the habitual-offender information more than ten days after the omnibus date because the State lacked good cause. We disagree.[1]

Indiana Code section 35-34-1-5(e) governs the amendment of a charging information to include a habitual-offender charge and states:

> An amendment of an indictment or information to include a habitual offender charge . . . must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial.

A trial court's finding of good cause is reviewed for an abuse of discretion, which occurs "only where the decision is clearly against the logic and effect of the facts and circumstances." *Land v. State*, 802 N.E.2d 45, 53 (Ind. Ct. App. 2004) (quoting *Palmer v. State*, 704 N.E.2d 124, 127 (Ind. 1999)), *trans. denied*.

---

[1] The State argues that Sexton waived this issue for appeal by not requesting a continuance after the trial court granted the State's motion to amend the information. We have previously held that under Indiana Code section 35-34-1-5, "a defendant's failure to request a continuance after a trial court allows a pre-trial substantive amendment to the charging information over defendant's objection results in waiver." *Wilson v. State*, 931 N.E.2d 914, 918 (Ind. Ct. App. 2010), *trans. denied*. However, because we prefer to decide cases on their merits, we will address Sexton's claim as raised on appeal.

"Good cause" is not defined, but was found to exist in *Johnican v. State*, 804 N.E.2d 211 (Ind. Ct. App. 2004). The State filed its habitual-offender count well past the ten-day period established under the statute, and approximately a month before trial. *Id.* at 214-15. In explaining the delay, the State said that it had promised not to file the habitual-offender enhancement as part of plea negotiations; as soon as it became apparent that Johnican was not going to agree to a plea, the State filed its amendment. *Id.* at 215. The trial court found that this constituted good cause, stating:

> The plea negotiations continued up to or very shortly prior to the filing of the enhancement. . . . Johnican may not now be heard to successfully argue that he was surprised by the late filing of the enhancement. Nor should the Defendant be permitted to virtually weaponize the State's previous offer of leniency, by claiming that the duration of the State's period of forbearance was essentially too lengthy.

*Id.* This Court agreed with that assessment. We reached the same conclusion in *Land*, holding that the trial court did not abuse its discretion by finding "good cause in the delay in filing the habitual-offender count because of ongoing plea offers that were made." 802 N.E.2d at 53. We therefore hold that in this case, like in *Johnican* and *Land*, since the State delayed in filing the habitual-offender information due to ongoing plea negotiations, it has shown good cause for its filing of the information more than ten days after the omnibus date.

Moreover, Sexton has failed to show that any unfair prejudice has resulted to him as a result of the late filing of the habitual-offender information. The purpose of Indiana Code section 35-34-1-5(e) is "to allow a defendant sufficient time to prepare a defense for the habitual offender charge." *Id.* Sexton has made no credible claim that he was prejudiced in any way or did not have sufficient time to prepare a defense. The State

6

filed its habitual-offender information on February 14, 2012, and Sexton did not ask for a continuance at that time. Appellant's App. p. 17. Two weeks later, Sexton asked for a continuance due to his counsel's scheduling conflicts, and that was granted over the State's objection. *Id.* at 89-91. As a result of that continuance, Sexton's request for a speedy trial was waived. Sexton contends that the waiver of his request for a speedy trial was because of the filing of the habitual-offender information and was prejudicial to him, but it was actually a result of his own request for a continuance. Sexton also had five weeks to prepare his defense for trial, and he did not request a continuance for additional time to prepare for the habitual-offender charge. Sexton has therefore failed to show that any unfair prejudice has resulted to him as a result of the late filing of the habitual-offender information.

We hold that the trial court did not abuse its discretion in finding good cause to allow the State to file the habitual-offender information more than ten days after the omnibus date.

## II. Sufficiency of the Evidence

Sexton also contends that there is insufficient evidence that he was a habitual offender. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences draw therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the

7

judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

In order to establish that Sexton is a habitual offender, the State must show "beyond a reasonable doubt that the defendant previously has been convicted of two unrelated felonies." *Dexter v. State*, 959 N.E.2d 235, 237 (Ind. 2012) (citing Ind. Code § 35-50-2-8(a), (g)). In order to prove the prior felony convictions beyond a reasonable doubt, the "State *must* introduce into evidence proper certified and authenticated records," *id.* at 238, that are "sufficient to establish the fact of the alleged . . . conviction[s]." *Id.* at 239. Sexton, however, argues that *Dexter* requires a signed abstract of judgment in order to prove a prior felony conviction. Appellant's Br. p. 13. We disagree, as *Dexter* holds only that an abstract of judgment, standing alone, must be signed by the trial judge "to constitute substantial evidence of probative value sufficient to sustain a habitual-offender enhancement." *Dexter*, 959 N.E.2d at 239. *Dexter* does not prevent us from looking at all of the documents provided by the State to determine if it has shown two previous unrelated felony convictions beyond a reasonable doubt.

During the habitual-offender stage of proceeding, the State introduced evidence that Sexton had previously been convicted of Class B felony burglary and sentenced to probation on February 10, 1989, and convicted of Class B felony criminal deviate conduct and sentenced on June 12, 1990. To show the criminal deviate conduct conviction, the State introduced the signed abstract of judgment, the charging information, and the arrest report from that case. Ex. p. 724-29. This was sufficient to

show Sexton's conviction beyond a reasonable doubt, as *Dexter* says that a signed abstract of judgment standing alone will suffice. 959 N.E.2d at 239.

To show Sexton's burglary conviction, the State provided the arrest report, the charging information, and the order of probation from that case, as well as the signed abstract of judgment for the revocation of Sexton's probation after his conviction. Ex. p. 731-37. Sexton argues that this is insufficient evidence to prove his burglary conviction beyond a reasonable doubt. We disagree. The cause number on all of the documents match, the order of probation states that Sexton was convicted of burglary, and both the order of probation and the abstract of judgment for the probation revocation are signed by the trial court judge. Further, the abstract of judgment for the revocation of Sexton's probation explicitly states that "The defendant was found Guilty of the following crimes under the above-referenced cause" and then lists Class B felony burglary. *Id.* at 736. The date of sentencing for the burglary is not listed, but the date Sexton was sentenced to probation is listed as "2-10-89," *id.* at 737, and the date when his probation was revoked is listed as "7-10-90," *id.* at 736; both dates are well before his 2011 arrest in this case. This is sufficient evidence to prove Sexton's burglary conviction.

Indiana Code section 35-50-2-8(c) states in relevant part that, "A person has accumulated two (2) prior unrelated felony convictions for purposes of this section only if: (1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction; . . . ." Sexton argues that because the date of sentencing for his burglary conviction is not listed, we cannot be sure beyond a reasonable doubt that the burglary conviction was before his arrest for criminal deviate

conduct and therefore an unrelated felony. Appellant's Br. p. 13. However, drawing reasonable inferences from the documents provided, if Sexton was placed on probation for Class B felony burglary on February 10, 1989, and his probation was revoked in that same case on July 10, 1990, the sentencing for his burglary conviction naturally had to occur before both of those dates. Sexton was arrested for Class B felony criminal deviate conduct on June 7, 1989, almost four months after being placed on probation for his burglary conviction. We can therefore say that the State has shown beyond a reasonable doubt that Sexton's sentencing for his conviction for Class B felony burglary was before his arrest for Class B felony criminal deviate conduct, making it an unrelated felony.

Looking at all of the State's documents together, we find that the State has provided sufficient evidence to establish Sexton's alleged burglary conviction beyond a reasonable doubt. We therefore hold that there is sufficient evidence that Sexton has previously been convicted of two unrelated felonies and as a result is a habitual offender.

Affirmed.

BAILEY, J., and BROWN, J., concur.