Michael P. WATSON, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A05–0201–CR–2.

Court of Appeals of Indiana.

Oct. 17, 2002.

Amy K. Noe, Arnold & Noe, LLP, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Michael Watson, Jr., was convicted following a jury trial of criminal recklessness, a Class D felony. The trial court sentenced Watson to seven years in the Indiana Department of Correction, including an enhancement of the sentence for Watson's habitual offender status. Watson appeals his conviction and sentence. We affirm the conviction and seven-year sentence.

### Issues

Watson raises six issues for our review which we consolidate and restate as follows:

1. Whether the trial court properly allowed the State to amend the charging information to include an habitual offender allegation after the omnibus date;

2. Whether the State presented sufficient evidence to support his conviction;

3. Whether the trial court properly denied Watson's motions to continue the trial and the sentencing hearing; and

4. Whether Watson's seven-year sentence is manifestly unreasonable.

### Facts and Procedural History

Watson was driving his car on the evening of March 8, 2000. Also in the car were his fiancée, Stacey Bundy, and three children, including Stacey's five-year-old son, Gavin Bundy. While driving to Stacey's house, Watson missed his turn and ended up on State Road 103, a road with which he was unfamiliar. Watson entered

a curve on State Road 103, lost control of the car and flipped off the side of the road. Watson was unable to remove Gavin from the car and he died of asphyxiation.

The State charged Watson with reckless homicide, a Class C felony. After the omnibus date, the State requested permission to file an habitual offender allegation against Watson. Over Watson's objection, the trial court allowed the State to amend the charging information.

Prior to trial, Watson sought to continue the trial pending the outcome of civil litigation also arising out of this incident. The trial court denied Watson's motion to continue.

Watson was found guilty by a jury of the lesser included offense of criminal recklessness, a Class D felony. Watson was also determined to be an habitual offender. The morning of the sentencing hearing, Watson moved to continue the hearing. The trial court denied his motion. The trial court sentenced Watson to a total of seven years for his criminal recklessness conviction and habitual offender enhancement.

## Discussion and Decision

### I. Addition of Habitual Offender Count

Watson contends that the trial court erred by permitting the State to amend the charging information to add an habitual offender count. The time period during which the State may amend a charging information to add an habitual offender count is controlled by statute:

> (e) An amendment of an indictment or information to include an habitual offender charge under IC 35–50–2–8 must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of an habitual offender charge at any time before the commencement of the trial.

Ind.Code § 35–34–1–5(e). In this case, the omnibus date was February 6, 2001. The State sought to add the habitual offender count on March 16, 2001, more than ten days after the omnibus date.

Additionally, we note that, by using the phrase "may permit" in Indiana Code section 35–34–1–5(e), the legislature has given the trial court discretion to allow or disallow a belated habitual offender enhancement upon a showing of good cause by the state. *Mitchell v. State,* 712 N.E.2d 1050, 1053 n. 3 (Ind.Ct.App.1999).

Watson states that the purpose of Indiana Code section 35–34–1–5(e) is to allow a defendant sufficient time to prepare a defense for the habitual offender charge. *See Haymaker v. State,* 667 N.E.2d 1113, 1114 (Ind.1996). We agree. However, at the hearing, Watson was unable to show how the addition of an habitual offender charge would impair preparation of his defense. The habitual offender allegation was added almost two months before trial, leaving Watson time to prepare a defense to the charge. In fact, Watson concedes in his brief that he had enough time to prepare his defense. He contends solely that the State knew or should have known that Watson could be charged as an habitual offender from the night of the incident.

However, whether Watson had time to prepare his defense is not the only issue before us with regard to the belated addition of the habitual offender charge. The propriety of the untimely addition is dependent upon the State's showing of good cause as required by the statute. Here, Watson contends that the State knew about his prior convictions. He states that he told police the night of the accident that he was on parole and that he had a police record. He contends that the police

checked his record and, therefore, the State knew from the night of the accident that he had been convicted of two prior felonies. Tr. at 18–19. The State, however, contends that the officers knew only of the felony conviction for which Watson was on parole and therefore, the State did not consider adding an habitual offender charge to the information until the State was informed, through an anonymous telephone call, that Watson had another felony conviction.

The definition of an habitual offender is clearly defined by statute:

> The state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

Ind.Code § 35–50–2–8(a). Therefore, if the trial court found that the State knew of only one of Watson's prior felony convictions within the statutory time for amending the charging information, the trial court could have found good cause for the late amendment because the State had no reason to believe that Watson was an habitual offender.

The trial court held a hearing on the State's request to amend the charging information amendment on April 18, 2001. At that hearing, Watson testified that he told police the night of the incident that he was on parole. Tr. at 17–19. From this, Watson asserts that the officers knew of his entire record. We disagree. Merely telling police that he was on parole did not necessarily confer the information that Watson had been convicted of two prior felonies. Watson did not testify that the officers were aware of both of his felonies, merely that they were aware that Watson was on parole. At the hearing, the State responded that the officers were aware only of Watson's parole and the State was unaware of his additional felony charge until they received an anonymous phone tip. *Id.* at 30–31.

■ The trial court accepted the testimony of the State as to the amount of knowledge the officers had at the time of the arrest and found the State had good cause to request a belated habitual offender amendment. This is within the discretion of the trial court. Therefore, the trial court did not abuse its discretion when it found good cause to allow the State to amend its charging information to include an habitual offender charge.

## II. Sufficiency of the Evidence

### A. Standard of Review

■ Our standard of review for sufficiency claims is well settled. We will not reweigh the evidence or assess the credibility of witnesses. *Smith v. State*, 725 N.E.2d 160, 161 (Ind.Ct.App.2000). We consider only the evidence most favorable to the verdict, together with all reasonable inferences that can be drawn therefrom. *Id.* If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. *Id.*

### B. Evidence of Criminal Recklessness

To convict Watson of criminal recklessness, the State was required to prove that he recklessly inflicted serious bodily injury on another person. Ind.Code § 35–42–2–2(c). A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. Ind.Code § 35–41–2–2(c).

The testimony of the State's expert witnesses Terry Neal and David Zedonis placed Watson's speed at the time of the incident at a minimum of seventy miles per hour, with Neal estimating it was eighty-two miles per hour. Tr. at 181, 271. Additionally, Watson's witness Carolyn Coffin, an engineer with the Indiana Department of Transportation, testified that there were warning signs in either direction before the curve with thirty mile per hour advisory speed plaques under the warning signs. *Id.* at 346–47. Considering Watson was driving at dusk on an unfamiliar road with three small children in the backseat, speeding at all could be considered reckless.

Watson relies on *Wallace v. State*, 558 N.E.2d 864 (Ind.Ct.App.1990), in which this court held a truck driver was not reckless when he failed to check his mirror and use his turn signal before changing lanes on the highway. However, in that case, the truck driver was unaware that a car was proceeding next to his truck and was forced off the highway because of his lane change. This court held that the driver could not be held reckless for a potential harm unknown to him. *Id.* at 866. We stated that, had the driver known of the car's presence next to his truck and still changed lanes, that behavior would constitute recklessness. Id.

Watson argues that, like the truck driver in *Wallace*, he was unaware of the potential risk. Therefore, as we held in *Wallace* that the truck driver's sole intention was to change lanes, he contends we should hold that his sole intention was to get home and, therefore, he should not be held accountable for a potential harm unknown to him.

We find this argument unconvincing. The truck driver in *Wallace* was unaware of an approaching car next to his truck, so he could not have expected the danger that resulted. Watson, however, knew or should have known that driving over seventy miles an hour at dusk on an unfamiliar road makes an incident more likely. Moreover, there were posted signs warning of the upcoming curve in the road. Watson cannot now claim that he was unaware of the danger of an incident.

Rather, we find *Savage v. State*, 650 N.E.2d 1156 (Ind.Ct.App.1995), *rev'd on other grounds*, 655 N.E.2d 1223 (Ind.1995), to be persuasive. In *Savage*, a driver appealed his convictions for reckless homicide and criminal recklessness following an accident which killed one person and left another seriously injured. Savage argued that his driving did not meet the statutory definition of recklessness. However, we noted that it is the trier of fact who determines whether the defendant's conduct meets the statutory definition of recklessness. *Id.* at 1161. A police officer who saw Savage driving stated that he believed Savage was driving over thirty miles per hour, the posted speed limit. The trial court found that the speed was high enough to meet the statutory definition of recklessness and we refused to reweigh the evidence. *Id.* at 1161–62. Additionally, Savage presented evidence that he was unfamiliar with the area and, therefore, his conduct was not reckless. However, the trial court found that his speed at the time of the accident and the fact that he disregarded a stop sign constituted recklessness. *Id.* at 1162. We refused to reweigh the evidence and affirmed the convictions. *Id.*

■ Although Watson was unfamiliar with the area where the incident occurred, he knew or should have known that driving over seventy miles per hour at dusk on an unfamiliar road with three children in his car involves a substantial deviation from acceptable standards of conduct. The jury found that Watson's speed at the time of

the incident was sufficient to consider his behavior reckless. The conclusion of the jury was based on the probative evidence presented at trial and therefore, we will not disturb the decision of the jury.

### C. Intervening Cause

Additionally, Watson contends that the sway bar on his vehicle was corroded and broken prior to the accident. Watson states that the purpose of the sway bar is to minimize body roll from right to left and vertical movement of the wheel. Therefore, a broken sway bar could cause a swerving car to roll more than normal. Watson states this could possibly cause a car to flip over.

 An intervening cause is an independent force that breaks the causal connection between a defendant's actions and the victim's injuries. *Wooley v. State*, 716 N.E.2d 919, 928 (Ind.1999). In order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to hold the appellant responsible for the actual result. *Ewing v. State*, 719 N.E.2d 1221, 1225 (Ind.1999).

 At trial, Watson introduced evidence through his expert witness Robert Holland, the owner and operator of a frame and alignment shop, that a broken sway bar could cause more motion in a vehicle rounding a curve. Tr. at 387–89. The State produced evidence, however, that their expert witness Zedonis had performed a simulation of the accident. Through this simulation, Zedonis was able to exclude the broken sway bar as a contributing factor to the incident. Tr. at 249–51. Therefore, Watson's argument is no more than a request to reweigh the evidence which we cannot do.

### III. Motions for Continuance

### A. Standard of Review

 Rulings on non-statutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *Jackson v. State*, 758 N.E.2d 1030, 1033 (Ind.Ct.App.2001). An abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

### B. Denial of Watson's Motions for Continuance

Watson appeals two motions for continuance which were denied by the trial court. First, he moved to continue the trial pending the outcome of a civil lawsuit arising out of the same incident. Second, he moved to continue the sentencing hearing, claiming he needed additional time to research questions regarding the information in the pre-sentence report.

#### 1. Watson's Motion to Continue the Trial

On August 31, 2001, Watson moved to continue his trial pending the outcome of a civil case filed by the administrator of Gavin Bundy's estate. Appellant's Appendix at 201–03. The civil case was filed against Watson, the Indiana Department of Transportation, the State of Indiana, and Stacey Bundy. In his motion, Watson stated that, among other allegations, the administrator alleged:

> The Indiana State Dept. of Transportation (IDOT) and the State of Indiana, owed a duty to the plaintiff and Gavin and Josiah Bundy and failed to exercise reasonable care in the design, construction, maintenance and repair of S.R. 103. In addition, the defendants, the Indiana State Department of Transportation (IDOT) and the State of Indiana owed a duty to the plaintiff and Gavin and Josi-

ah Bundy and failed to use due care in securing the dangerous curve by placing a guard rail, by failing to design the roadway properly, by inadequately and failing to warm [sic] of the dangerous conditions of the roadway, by improperly placing warning signs, by failing to sue [sic] reasonable care to keep the public thoroughfare in a safe condition, by failing to have an appropriate amount of shoulder slope, by failing to properly regulate the use of the public ways and by failing to upgrade the roadway after having notice of continuing incidents resulting in serious bodily injury and death, among other things.

Appellant's Appendix at 202. Watson argued that the plaintiffs in the civil case would be able to present information about the design of the road and the number of accidents on the road. Watson contends that this could have become a defense which was unavailable to him because of his limited financial resources and, therefore, he would have benefited by his criminal trial being continued until after the civil trial. *Id.*

■ We find this argument unconvincing. Other than financial, Watson has afforded us no reason why he could not have presented a defense based upon the design of the road at his trial. He has not shown that the defense was unavailable to him, merely that he could not have presented it as well as someone with more money. He has not shown how the expert witnesses from the civil trial were unavailable to him at his criminal trial.

Additionally, even if the witnesses had testified that the road was poorly designed, Watson's recklessness in driving over seventy miles per hour on an unfamiliar road at dusk with three children in his car would not be negated. Watson's recklessness related to his behavior, not to the design of the road. Therefore, we hold that the trial court did not abuse its discretion in denying Watson's motion to continue his criminal trial until after the civil trial had ended.

### 2. Watson's Motion to Continue the Sentencing Hearing

On October 22, 2001, the trial court set sentencing for Monday, November 19, 2001, and ordered the Probation Department to prepare and file a Pre Sentence Investigation Report and to provide copies to the attorneys no less than five days prior to sentencing. The report was not filed until Friday, November 16, 2001. The record shows that the Probation Department attempted to fax the report to Watson on Thursday, but his counsel's phone lines were inoperative, so the report was faxed to a nearby attorney who dropped the report off after the court closed on Friday. Although Watson was able to meet with his counsel on Saturday, he claims that he was unable to properly proceed at the scheduled sentencing hearing because of the inadequate time he had to address the issues in the report.

■ Watson contends that the Pre Sentence Investigation Report is inaccurate and biased against him. However, his brief is void of any specific examples of such inaccuracies or biases. Even though the Probation Department did not follow the deadlines of the trial court in providing Watson with a timely copy of the report, Watson has been unable to show that he was prejudiced by the denial of his motion to continue.

### IV. Sentencing

### A. Standard of Review

■ It is axiomatic that sentencing decisions are committed to the sound discretion of the trial court, and we will reverse a sentence only upon manifest abuse of discretion. *Creager v. State,* 737 N.E.2d

771, 781 (Ind.Ct.App.2000), *trans. denied.* Because a certain degree of subjectivity cannot be eliminated from the sentencing process it is inappropriate for an appellate tribunal to substitute its opinion regarding sentencing for that of the trial court. *Id.* We will not revise a sentence unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Id.*

### B. Watson's Seven–Year Sentence

Watson received a seven-year sentence for his Class D felony criminal recklessness conviction, including an enhancement for the habitual offender determination. The Sentencing Order states:

> As to the charge of Criminal Recklessness, a Class D Felony, and as an habitual offender, [Watson] is sentenced to the Indiana Department of Correction for a period of seven (7) years.

Appellant's Appendix at 320. Additionally, the sentence for criminal recklessness and the sentence for Watson's habitual offender status are combined on the Abstract for Judgment. *Id.* at 329.

The sentence for a Class D felony ranges from six months to three years:

> A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances.

Ind.Code § 35–50–2–7. In addition, for Watson's habitual offender status, the trial court could have added up to three times the presumptive sentence:

> The court shall sentence a person found to be a habitual criminal to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense.

Ind.Code § 35–50–2–8. Therefore, the trial court could have sentenced Watson within the range of two years and seven and one-half years. The trial court sentenced Watson to seven years, clearly within the range authorized by statute.

Watson argues that he was given nearly the maximum sentence authorized by statute. Although Watson's sentence is not the maximum allowable, we find *Brown v. State,* 760 N.E.2d 243 (Ind.Ct.App.2002), *trans. denied,* to be persuasive. In *Brown,* we were presented with an appellant who believed the trial court should be allowed to sentence only the very worst offenders to the maximum allowable sentence. In *Brown,* we noted that, if we were to follow this rule every time we review a sentence, we would reserve the maximum punishment for only the single most heinous offense. *Id.* at 247. In order to determine whether an offense fits that description, we would be required to compare the facts of the case before us with either those of other cases that have been previously decided, or—more problematically—with hypothetical facts calculated to provide a "worst-case scenario" template against which the instant facts can be measured. *Id.* If the latter were done, one could always envision a way in which the instant facts could be worse. *Id.* In such case, the worst manifestation of any offense would be hypothetical, not real, and the maximum sentence would never be justified. *Id.*

Therefore, in deciding whether a maximum sentence is appropriate, we should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sen-

tenced, and what it reveals about the defendant's character. *Id.*

 The record shows that Watson was driving at a speed of at least seventy miles per hour on an unfamiliar road at dusk. In the car were his fiancée and three children. Watson's recklessness caused the death of a five-year-old boy. Considering the nature, extent, and depravity of Watson's offense, we cannot say that his sentence is manifestly unreasonable.

 Finally, Watson argues that we should remand the sentence to the trial court for a more definite statement of how much of his sentence relates to his conviction for criminal recklessness and how much relates to his status as an habitual offender. However, we find that the trial court clearly set out aggravating and mitigating factors when sentencing Watson and found that the aggravating factors outweighed the mitigating factors. Tr. at 640–44. Therefore, the trial court could have sentenced Watson for seven and one-half years if it had imposed the maximum aggravated sentence plus the maximum habitual offender enhancement. Because the seven-year sentence is within the parameters established by statute, there is no need to remand to the trial court for a more definite sentencing order.

### Conclusion

We hold that the trial court did not abuse its discretion in finding good cause to allow the State to amend its charging information to include an habitual offender charge. Additionally, the State presented sufficient evidence to support Watson's conviction of criminal recklessness. We also hold that the trial court did not abuse its discretion in denying Watson's motions to continue the trial and the sentencing hearing. Finally, Watson's seven-year sentence for criminal recklessness is not manifestly unreasonable considering the nature, extent, and depravity of the offense. Watson's conviction and sentence are affirmed.

Affirmed.

RILEY, J., and MATTINGLY–MAY, J., concur.