

FILED

Sep 14 2020, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alyssa Leigh Shepherd,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 14, 2020<br><br>Court of Appeals Case No.<br>20A-CR-134<br><br>Appeal from the Fulton Superior<br>Court<br><br>The Honorable Gregory Heller,<br>Judge<br><br>Trial Court Cause No.<br>25D01-1810-F5-814 |

**Riley, Judge.**

[1] Appellant-Defendant, Alyssa Shepherd (Shepherd), appeals following her conviction for three counts of reckless homicide, Level 5 felonies, Ind. Code § 35-42-1-5; reckless driving, a Class A misdemeanor, I.C. § 9-21-8-52(b); and criminal recklessness while armed with a deadly weapon, a Level 6 felony, I.C. §§ 35-42-2-2(a), -(b)(1)(A).

[2] We affirm in part, vacate in part, and remand with instructions.

## ISSUES

[3] Shepherd presents this court with four issues, which we restate as:

> (1) Whether the State proved beyond a reasonable doubt that she acted recklessly;
>
> (2) Whether the trial court abused its discretion in rejecting her proposed final instruction;
>
> (3) Whether her convictions for reckless driving and criminal recklessness violate double jeopardy prohibitions; and
>
> (4) Whether the trial court erred by ordering her driver's license to be suspended for consecutive periods.

## FACTS AND PROCEDURAL HISTORY

[4] On October 30, 2018, at around 7:15 a.m., Shepard failed to stop for a school bus that had stopped to pick up children outside a mobile home park on State Road 25 outside of Rochester, Indiana, in rural Fulton County. As six-year-old twin boys M.I. and X.I. and the twins' nine-year-old sister A.S. crossed the

southbound lane of S.R. 25 to board the bus, Shepherd, who was driving her truck southbound, collided with the children, resulting in their deaths. Shepherd also collided with and seriously wounded eleven-year-old M.L., who has required twenty-one surgeries to address his injuries.

[5] October 30, 2018, was a dark but clear and dry morning. Shepherd was not intoxicated or distracted by phone use, and she was wearing her glasses that corrected her vision to 20/20. Shepherd was taking her younger brother to school and had her own two children in her truck. North of the mobile home park, S.R. 25 curves and then empties into a straightaway prior to the location of the school bus stop. Shepherd passed a sign warning of the curve, and 860 feet before she reached the bus stop location, she passed a large, yellow, reflective 'Watch for School Bus' sign. Shepherd was driving approximately 58 miles per hour, slightly above the 55-miles-per-hour speed limit. Shepherd's truck's collision recording data showed that she did not decrease her speed and only engaged her truck's brakes between 1.3 and .8 seconds before the collision. The driver of the car directly behind Shepherd saw that there was a school bus stopped in the road and stopped her own car. The driver of a box truck directly behind the school bus had also stopped.

[6] The school bus stop at issue has been in that location for fifty years, with only one other accident having occurred there when a driver was texting and rear-ended the bus. The school bus was a full-sized bus which was painted yellow and was equipped with yellow flashing lights, red flashing lights, a roof-mounted strobe, wig-wagging headlights, and an illuminated stop arm shaped

like a stop sign. The bus's warning signs and signals were all operational and engaged at the time of the collision. As she approached the stopped school bus, Shepherd saw the lights ahead and asked her brother what he thought it was. He was unsure. Shepherd decided she was going to go around the large vehicle with its flashing red lights. While still in her car after the collision, Shepherd called a friend and stated that she thought the vehicle was "an oversized load or trailer and was waiting to get closer to the vehicle to determine what they were doing[.]" (Transcript Vol. IV, p. 67).

[7] On October 30, 2018, the State filed an Information, charging Shepherd with, after several amendments, three counts of Level 5 felony reckless homicide, one count of Class A misdemeanor reckless driving, and one count of Level 6 felony criminal recklessness with a deadly weapon.

[8] On October 15, 2019, the trial court convened Shepherd's four-day jury trial. Shepherd testified that, as she came around the curve,

> I saw a vehicle. It was a very large vehicle. I couldn't tell what it was. Being a Fulton County resident, I assumed it was an oversized load. I see lots of tractors. I see lots of, like modular homes being transported.
>
> * * * *
>
> Counsel: And you say it's in the other lane, you mean the northbound lane going north?

> Shepherd: Correct. [] So I couldn't tell what it was, but I knew it wasn't in my lane, and so I, like, out loud spoke, like, what is that? I didn't know what it was.

(Tr. Vol. IV, p. 14-15). On cross-examination, Shepherd acknowledged that, on the day of the collision, she knew that school buses were large vehicles equipped with red and yellow blinking lights, reflective signage demarcating them as school buses, and stop arms shaped like stop signs with red blinking lights. Shepherd also acknowledged that she knew that a 'Watch for School Bus' sign required a driver to be aware that a school bus could be in the area and that drivers are required to stop for a stopped school bus. The driver of the car directly behind Shepherd testified that before she exited the curve on S.R. 25, she saw that there was a yellow and black school bus with its red "stoplight on the side" extended and with red lights on its top in the road. (Tr. Vol. II, p. 225). A reconstruction video made with the same type of truck driven by Shepherd, driven in the dark and traveling at the same speed as Shepherd, was admitted into evidence. The reconstruction showed the visibility of the school bus with its stop arm extended and that the 'Watch for School Bus' sign was visible approximately twelve seconds before reaching the site of the collision. The driver of the school bus involved in the collision testified that he had been driving the route for approximately five months and had never had anyone disregard the school bus's stop signal in the morning.

[9] During the final instruction conference, Shepherd proposed to instruct the jury that evidence of inadvertence, lack of attention, forgetfulness, thoughtfulness, or

an error of judgment of the driver of a vehicle may not support a charge of reckless homicide. The trial court declined to give the instruction. After deliberating for approximately three and one-half hours, the jury found Shepherd guilty as charged.

[10] On December 18, 2019, the trial court held Shepherd's sentencing hearing. The trial court sentenced Shepherd to three years for each of her reckless homicide convictions, to be served consecutively. The trial court ordered Shepherd to serve one year with the Department of Correction, one year with community corrections on home detention, and one year on probation. The trial court also sentenced Shepherd to one year each for her reckless driving and criminal recklessness convictions, to be served concurrently to each other but consecutively to Shepherd's other sentences, for an aggregate sentence of ten years. The trial court also suspended Shepherd's driver's license.

[11] Shepherd now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

### A. *Standard of Review*

[12] Shepherd argues that the State failed to prove beyond a reasonable doubt that she acted recklessly, as required to sustain her convictions for reckless homicide

and criminal recklessness.[1]  When we conduct a sufficiency of the evidence review following a jury verdict, the appellate posture is markedly deferential to the outcome below:  We will neither reweigh the evidence nor re-examine witness credibility, and we "'must consider only the probative evidence and reasonable inferences *supporting* the verdict.'"  *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (emphasis in original)).  "Indeed, it is our duty to affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."  *Id.* (quotation omitted).

## B.  *Recklessness*

[13]  A person commits reckless homicide when he or she recklessly kills another human being.  I.C. § 35-42-1-5.  A person commits Level 6 felony criminal recklessness when he or she recklessly, knowingly, or intentionally commits an act while armed with a deadly weapon that creates a substantial risk of bodily injury to another person.  I.C. §§ 35-42-2-2(a), -(b)(1)(A).  "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."  I.C. § 35-41-2-2(c).  Because intent is a mental state, absent an admission by the defendant, "the trier of fact must resort to the reasonable inferences from both the direct

---

[1]  We address the evidence supporting only these convictions because, as set forth below, Shepherd's conviction for Class A misdemeanor reckless driving must be vacated.

and circumstantial evidence to determine whether the defendant ha[d] the requisite knowledge or intent to commit the offense in question." *Stokes v. State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010), *trans. denied*. Accordingly, intent "may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Id.*

### i. *Conscious Disregard*

Shepherd first argues that the State failed to show that she "made a conscious choice to pass a stopped school bus." (Appellant's Br. p. 16). In addressing Shepherd's argument, we begin by observing that it is well-established that evidence that "an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtlessness of the driver of a vehicle, or from an error of judgment on his part" does not amount to reckless conduct. *Beeman v. State*, 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953). Rather, recklessness "is a form of intentional harm-doing in that it is volitional in a wrong direction. Recklessness, however, differs from intentionality in that the actor does not seek to attain the harm; rather he believes that the harm will not occur." *Wallace v. State*, 558 N.E.2d 864, 865 (Ind. Ct. App. 1990) (quoting *Humes v. State*, 426 N.E.2d 379, 383 (Ind. 1981)).

In *Beeman*, while examining the sufficiency of the evidence to support a reckless homicide conviction, our supreme court addressed the nature of the *mens rea* of recklessness under circumstances similar to those at hand. The case arose from a motor vehicle accident that occurred as Beeman drove a loaded tractor trailer on a highway that was being resurfaced. *Id*. at 921-22. Starting several miles

before the resurfacing worksite, signs had been erected at frequent intervals bearing the message "Road under construction – Travel at your own risk." *Id.* at 921. A line of approximately twenty cars had accumulated, waiting to pass through the one-lane area at the worksite. *Id.* Two or three of these cars were in the process of stopping, including the last car in the line driven by Vernon Brandt. *Id.* at 920-22. Although there was a curve in the highway just before the site of the collision, after Beeman exited the curve, he had a 1600-foot, unobstructed view of Brandt's car. *Id.* at 921-22. It was daylight, the day was clear, and road conditions were dry and level. *Id.* at 922. Beeman did not reduce his speed and collided with Brandt's car, killing Brandt's passenger. *Id.* At trial, the evidence showed that Beeman was driving 55 to 60 miles per hour and that, had his brakes been engaged, they would have stopped his truck in less than 250 feet. *Id.* There was no evidence that Beeman's attention had been diverted, but he testified that he only noticed that traffic had stopped when he was between 300 and 250 feet from the line of stopped cars and then discovered that his truck's brakes were not functional. *Id.* at 923. Beeman was charged with reckless homicide and was convicted following a bench trial. *Id.* at 920.

[16] Beeman challenged the sufficiency of the evidence supporting his conviction, arguing that he had merely been negligent, having through inadvertence, lack of attention, or an error in judgment failed to realize that traffic had stopped in time to avoid the collision. *Id.* at 922. At the time, the offense of reckless homicide comprised, in relevant part, "the driving of a vehicle with reckless disregard for the safety of others, thereby causing the death of another." *Id.*

The court observed that 'reckless disregard' meant the disregard which occurs when a driver, with knowledge of existing conditions, voluntarily refrains from doing a prudent act which, under the circumstances, shows "an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that an accident may occur." *Id*. (quotation omitted). The *Beeman* court further found that recklessness "involves a conscious choice of a course of action which injures another, either with knowledge of the serious danger to others involved therein, or with knowledge of facts which would disclose the danger to any reasonable man." *Id*. at 922-23.

[17] In affirming Beeman's conviction, the court acknowledged that proof that an accident arose out of the driver's inadvertence, lack of attention, forgetfulness, thoughtlessness, or from an error in judgment on his part would be insufficient to sustain the conviction. *Id*. at 922. The *Beeman* court found that, even though conflicting evidence had been admitted regarding the performance of the truck's brakes and Beeman's speed, the trial court could have reasonably concluded those factors supported a finding of recklessness. *Id*. at 923. The *Beeman* court also noted that "although he testified he did not notice the stopped traffic until he was within 250 or 300 feet of it, it could be inferred from the other evidence that such was not the case." *Id*. The court found that, in light of the trial court's rejection of Beeman's explanation or justification that his brakes failed, Beeman failed to apply his brakes "under conditions of danger of which he

must have been aware[.]" *Id*. Observing that at times human behavior is not consistent with reason, the court concluded that

> [t]he fact that, in taking chances which no reasonable man would take, they do not actually intend to kill or maim others should not and will not relieve them of the consequences of their reckless disregard for the safety of others.

*Id*.

[18] *Beeman* thus illustrates that a conviction for reckless homicide may be sustained where the evidence either shows that a defendant understood the precise nature of the danger before him yet chose to disregard it or where a person simply has "knowledge of facts which would disclose the danger to any reasonable man," which he then disregards. *Id*. The *Beeman* court concluded that, despite Beeman's testimony to the contrary, it could be inferred from "the other evidence" that he had noticed the stopped traffic in time to stop his own truck. *Id.* The other evidence supporting a finding that Beeman noticed the stopped traffic in time to react included the facts that the possibility of an upcoming hazard was announced through posted signs, Beeman had an unobstructed view of the hazard once he exited the curve, and nothing had diverted his attention prior to the collision. *Id*. at 921-22.

[19] Here, the evidence most favorable to the jury's verdict was that Shepherd was driving her own brother to school at the time of the collision, a circumstance from which the jury could infer that she knew that October 30, 2018, was a school day and that students were on their way to school. Shepherd passed a

sign warning her to 'Watch for School Bus,' which was a more detailed warning of a possible upcoming hazard than that provided by the road signs in *Beeman*. *See also Watson v. State*, 776 N.E.2d 914, 919 (Ind. Ct. App. 2002) (rejecting Watson's contention that he was unaware of the potential risk of navigating a curve at a high speed, reasoning that a posted sign warned of an upcoming curve and concluding that "[he] cannot now claim that he was unaware of the danger of an incident.").

[20] In addition, all the school bus's signals and signage, including its stop arm, were functional and engaged. The stopped school bus was visible and identifiable as a stopped school bus with its stop arm extended to the driver directly behind Shepherd, who, even in the dark conditions of the morning, saw the bus before exiting the curve onto the straightaway and stopped her own car. The reconstruction video showed that the school bus was visible for about one-quarter of a mile and fifteen seconds through the curve to the collision site. Notably, Shepherd acknowledged at trial that she had seen school buses and knew that a school bus was a large vehicle equipped with various safety signals, including red flashing lights and a stop arm shaped like a stop sign. Shepherd further acknowledged at trial that a stop sign means stopping is required and that drivers are required to stop for a stopped school bus. Shepherd admitted that she had seen a large vehicle with red flashing lights as she came out of the curve that morning. Nothing diverted Shepherd's attention or ability to discern what was before her.

In light of *Beeman* and the totality of the evidence, we conclude that the jury reasonably concluded that Shepherd recognized that the vehicle before her in the road was a stopped school bus or that she was aware of conditions that would have disclosed that fact to any reasonable person. Despite that knowledge, Shepherd made a conscious and voluntary decision not to stop or decrease her speed and, instead, to drive ahead and "wait[] to get closer to the vehicle to determine what they were doing[.]" (Tr. Vol. IV, p. 67). "[I]t is the trier of fact who determines whether the defendant's conduct meets the statutory definition of recklessness." *Watson*, 776 N.E.2d at 919. We conclude that the jury could have reasonably determined that a person who has decided to drive full highway speed toward a vehicle she knows is a stopped school bus has acted in conscious disregard of the harm that may result.

Shepherd argues that the evidence merely showed that the collision was the result of her "inattention of most likely an error in judgment" and likens her case to *Whitaker v. State*, 778 N.E.2d 423 (Ind. Ct. App. 2002), *trans. denied*. (Appellant's Br. p. 18). In *Whitaker*, this court determined there was insufficient evidence to support a reckless homicide conviction arising from a traffic accident where Whitaker's tanker truck rear-ended a driver stopped for a left turn, killing the driver of the stopped car. *Id.* at 424-25. Whitaker had been following the car at a distance of two-to-four car lengths, he had been driving slightly over the speed limit, no weather or road conditions contributed to the collision, and he was sober and well-rested. *Id.* The State argued that Whitaker's violation of the traffic code's prohibitions against excessive speed

and following too closely supported a finding of recklessness on his part. *Id*. at 426-28. The court held the evidence to be insufficient, in that Whitaker was traveling slightly above the speed limit, which was only a minor deviation from the traffic code, and because the traffic code's prohibition on following too closely was too subjective and subject to ever-changing mental calculations based on traffic conditions to support the conviction. *Id*. The court also concluded that Whitaker was keeping up with traffic and following at a distance similar to others on the road, so there was insufficient evidence that he had deviated from acceptable driving standards. *Id*. at 427-28. The court observed that Whitaker's testimony that he had failed to notice the stopped car ahead of him until it was too late was evidence of his inadvertence or lack of attention, which only amounted to negligence on his part and that the State's argument that Whitaker mistakenly thought the car would make the left turn before he reached it, if true, would merely have been a gross error in judgment. *Id*. at 428.

[23] *Whitaker* is distinguishable from the instant case for several reasons. Here, as we have already determined, there was other evidence contradicting Shepherd's testimony sufficient to show that Shepherd knew or was chargeable with knowledge that the vehicle ahead was a stopped school bus. In addition, this was not a case where Shepherd mistakenly thought she may have had time to pass the stop before any children crossed. Instead, Shepherd exercised no judgment at all related to risk, but rather consciously decided to drive full speed ahead knowing of the potential danger. We also observe that it was not

necessary for the State to prove that Shepherd violated any provisions of the traffic code to establish that Shepherd committed reckless homicide. *See Barber v. State*, 863 N.E.2d 1199, 1205 (Ind. Ct. App. 2007) (rejecting Barber's argument that the evidence supporting his reckless homicide was insufficient because it had not been shown he had violated any traffic laws), *trans. denied*. However, even if the State had relied upon evidence that Shepherd had violated a traffic law, *Whitaker* does not help her, as unlike the minor traffic code speeding violation at issue in *Whitaker*, Shepherd's failure to stop for the school bus was a gross deviation from the traffic code because Shepherd did not even attempt to decrease her speed. *Whitaker* is further distinguishable because, unlike a prohibition against following too closely, the only potential mental calculation necessary or subjectivity about stopping for a school bus is how far away from a bus one must stop, a factor not at issue in this case.

[24]　Neither do we find that *Seibert v. State*, 156 N.E.2d 878 (1959), supports Shepherd's position that the State failed to prove her reckless intent. In *Seibert*, our supreme court reversed the reckless homicide conviction of a driver who attempted to pass a car on a blind hill and collided with an oncoming car, killing the driver. *Id.* at 878. The court found no evidence of reckless intent because it was a "fooler" hill in that a driver could not discern that his view of oncoming traffic was obstructed and there was no sign or yellow line warning a driver of that fact. *Id*. at 880. Here, after Shepherd exited the curve, she had an unobscured view of the stopped school bus with its multiple signs and signals

warning her to stop, and, unlike the facts of *Seibert*, there was a sign posted warning her that she was approaching the potential hazard of a school bus stop.

[25] Shepherd also argues that "just as in *Seibert*, where the dangerousness of a 'fooler' hill existed prior to the accident, the inherent dangerousness of the bus stop was present" and cites evidence that a mother who had witnessed Shepherd collide with the children felt that children should not have been required to cross the highway to board the bus. (Appellant's Br. p. 18). This argument is misplaced. The *Seibert* court found insufficient evidence of reckless intent because the topography of the hill made it impossible to discern that a driver's view of oncoming traffic was obstructed. *See id*. at 880. Here, there was nothing inherently dangerous about the topography or road conditions on S.R. 25, and any dangerousness inherent in having children cross a highway to board a bus has no relevance as to whether Shepherd noticed the stopped school bus before her.

[26] Shepherd contends that we may not find sufficient evidence to support the jury's verdicts because the State argued at trial that it was not necessary to prove that she knew the hazard before her was a stopped school bus. However, the jury was instructed on the elements of the offenses, the statutory definition of recklessness, and that the arguments of counsel are not evidence. In addition, during closing argument, the prosecutor told the jury, "So [Shepherd] sees it. She's just going to wait to do anything about coming towards a plain yellow lit up bus with red lights and everything else, until she gets close enough to decide if she should take some action, so she's totally aware of it." (Tr. Vol.

IV, p. 109). Although this was one of many arguments made by the prosecutor, the State's argument to the jury included a theory that Shepherd was chargeable with knowledge that the vehicle before her was a stopped school bus.

[27] Shepherd also directs our attention to evidence that it was a dark morning, trees partially blocked the view of drivers coming around the curve, and the school bus had its alternating high beams engaged, which she implies could have blinded her. There was also evidence presented to the jury that, despite the darkness of the morning, the trees and brush present, and the school bus's engaged alternating high beams, Shepherd knew or was chargeable with the knowledge that the vehicle before her was a stopped school bus. That is the evidence the jury chose to believe. Pursuant to our standard of review, we must respect the jury's exclusive province to weigh conflicting evidence. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005).

### ii. *Substantial Deviation from Acceptable Standards of Conduct*

[28] Shepherd also briefly challenges the evidence supporting the jury's conclusion that her disregard for the danger in passing a stopped school bus involved a substantial deviation from acceptable standards of conduct. As part of our review of a determination that a driver's conduct constitutes a substantial deviation from acceptable driving behavior, we may look to evidence of the behavior of other drivers on the road. *See Whitaker*, 778 N.E.2d at 427-28 (concluding that, in light of evidence that Whitaker was keeping up with traffic and following at the same distance as other drivers, the State failed to show that his speed or following distance was a substantial deviation).

[29]     Here, the behavior of other drivers on the road, past and contemporaneous with Shepherd, indicated that her conduct was a substantial deviation from acceptable driving behavior. The school bus stop at issue had been in that location for fifty years, and there had only been one other accident there when a driver who was texting rear-ended the bus. There was some evidence presented at trial that a bread delivery truck had once passed a school bus at the same stop, but the incident had been reported by someone who observed it, indicating that the behavior was against community norms. The driver of the school bus involved in the collision had been driving the route for five months and had never seen another driver pass the stopped bus in the morning. In addition, the driver directly behind Shepherd stopped for the school bus, as did the box truck behind the school bus itself.

[30]     Shepherd's argument on this issue is that the State failed to prove a substantial deviation because it did not show that she "violated an infraction for failing to slow down when an oversized load was approaching." (Appellant's Br. p. 20). Shepherd contends that, because no provision exists in the traffic code dictating the speed of travel of a driver approaching an oversized load or a vehicle with flashing lights, the State could not make the requisite showing. The framing of Shepherd's argument ignores that the evidence supported a conclusion that she knew or was chargeable with knowledge that the hazard before her was a stopped school bus, and, therefore, crediting her argument would be in contravention of our standard of review which requires us to consider only the evidence which supports the jury's verdict. *See Bowman*, 51 N.E.3d at 1181. In

addition, as noted above, the State was not required to prove that she violated any traffic code provision in order to show that she committed reckless homicide. *Barber*, 863 N.E.2d at 1205. Shepherd's reliance on the *Whitaker* court's conclusion that the traffic code's prohibition on following too closely was too subjective and elusive of precise application to support a reckless homicide conviction is also unpersuasive here, as we have already concluded that there is no pertinent subjectivity or ever-changing mental calculation necessary when a driver is faced with a stopped school bus. In light of the evidence supporting the jury's determination that Shepherd consciously disregarded the stopped school bus in a substantial deviation from acceptable driving conduct, we will not disturb its verdicts.

## II. *Final Instruction*

[31] Shepherd next contends that the trial court abused its discretion when it rejected her proposed instruction on what evidence will not support a charge of reckless homicide. "The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse." *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). Upon reviewing a trial court's decision to reject a proposed instruction, we consider (1) if the tendered instruction correctly states the law; (2) if there was evidence to support giving the instruction; and (3) if the substance of the instruction was covered by other instructions that were given. *Id*. at 763-64.

[32] Shepherd argues that her proposed instruction correctly stated the law and was not covered by other instructions that were given. However, we resolve this

issue by addressing whether there was evidence to support giving the instruction, which read as follows:

> Proof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness[2] of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide.

(Appellant's App. Vol. III, p. 94). Shepherd's theory of the case was that she experienced an error of judgment which caused the collision because she thought the school bus was another type of vehicle. Her counsel told the jury during closing arguments that

> [a]gain, the State has attempted to simply criminalize an accident. And here we simply have a judgment in error. And I don't mean to trivialize anything. Do not and please don't think I am. It's a tragic judgment in error. And I think there have been a lot of judgments in error for a long time, which led to this situation. She misjudged the situation she was in.

(Tr. Vol. IV, pp. 128-29). The evidence showed that as Shepherd navigated the curve and came into the straightaway, she engaged her brother in a conversation about what was in the road ahead. Shepherd was not adjusting the radio, using her cellphone, intoxicated, or otherwise distracted. In other words, she was paying attention to driving and to the obstruction in front of

---

[2] Shepherd's proposed instruction departs from *Beeman*, which refers to "thoughtlessness". *Beeman*, 115 N.E.2d at 922. *Whitaker* cites *Beeman* but refers to "thoughtfulness". *Whitaker*, 778 N.E.2d at 425.

her. Therefore, not only was there no evidence presented supporting giving an instruction that the collision was the result of inadvertence, lack of attention, forgetfulness, or thoughtfulness, all of the evidence and Shepherd's theory of the case aligned against any inference that the collision was the result of those factors.

[33] Shepherd essentially argues that the Indiana appellate courts have held that a defendant in a reckless homicide case is always entitled to the instruction she proposed, regardless of the state of the evidence. However, we cannot conclude that the precedent she cites goes that far. For instance, in *Cichos v. State*, 184 N.E.2d 1, 2 (1962), the court found reversible error for failing to give a similar instruction, but, unlike the instant case, the facts as recited by the court in its opinion did not indicate that the evidence presented to the jury affirmatively negated much of the tendered instruction. Nevertheless, Shepherd cites from *Cichos* as follows:

> Whether *the evidence* in this case establishes that the deaths alleged in the indictment occurred from a mere accident, from negligent conduct or from willful and/or wanton misconduct so as to amount to recklessness, *is dependent on the weight given the various aspects of the case and the evidence by the jury*. The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls.

*Id*. at 3 (emphasis added). This language, rather than supporting Shepherd's position that her instruction is always warranted in a reckless homicide case, indicates that the evidence in any given case must still support the giving of the

instruction. The other Indiana Supreme Court case relied upon by Shepherd, *Springer v. State*, 798 N.E.2d 431, 433 (Ind. 2003), did not involve the rejection of an instruction similar to Shepherd's proposed instruction. However, in finding that the trial court did not abuse its discretion in rejecting Springer's proposed negligence instruction and reinstating Springer's conviction for criminal recklessness, the court examined the evidence presented at trial, observing that

> [a]nother factor pointing away from a finding of an abuse of discretion on the trial court's part is that *no reasonable interpretation of the facts* suggests that Defendant's conduct was merely negligent, that he merely failed to exercise reasonable or ordinary care.

*Id*. at 435 (emphasis added). Thus, our supreme court held that Springer was not entitled to an instruction on negligence simply because that was his defense theory—the facts presented at trial still had to support the giving of the instruction.

[34] Our conclusion does not conflict with the recent decision of this court relied upon by Shepherd, *New v. State*, 135 N.E.3d 619, 623 (Ind. Ct. App. 2019), as *New* did not involve the same proposed instruction as this case. *Sipp v. State*, 514 N.E.2d 330 (Ind. Ct. App. 1987), the other case cited by Shepherd, bears closer examination but does not persuade us that the trial court abused its discretion in her case. Sipp tendered an instruction virtually identical to that proposed by Shepherd, which the trial court had rejected at Sipp's trial on a charge of Class C felony reckless homicide resulting from a motor vehicle

collision. *Id.* at 331. On appeal, the State conceded that Sipp's instruction was a correct statement of the law but argued that the evidence did not support giving it. *Id.* The *Sipp* court summarily rejected the State's argument, citing the portion of *Cichos* set out above. We decline to apply *Sipp*, as we have concluded that *Cichos* did not stand for the proposition that a defendant facing a charge involving reckless conduct is always entitled to the instruction proposed by Sipp and Shepherd, and *Springer* more affirmatively illustrates the same. In addition, the only evidence cited by the court supporting Sipp's proposed instruction came from his grand jury testimony that he had an epileptic seizure and lost consciousness at the time of the accident. *Id.* at 330-31. To credit Shepherd's argument and follow *Sipp* would require us to ignore long-standing Indiana supreme court precedent dictating that, in conducting our review, we must examine whether a proposed instruction was supported by evidence presented to the jury. *See, e.g.*, *McCowan*, 27 N.E.3d at 763; *Bieghler v. State*, 481 N.E.2d 78, 96 (Ind. 1985); *Wathen v. State*, 204 N.E.2d 526, 526 (1965).

[35]  Here, Shepherd does not detail for us what evidence she argues supports the portions of her proffered instruction regarding inadvertence, lack of attention, forgetfulness, or thoughtfulness. Even if there were evidence to support Shepherd's defense theory that the collision resulted from an error of judgment on her part, she did not offer a separate instruction limited just to that wording. Given the lack of evidence to support the giving of Shepherd's proposed instruction, we find no abuse of the trial court's discretion in declining to give it.

### III. *Double Jeopardy*

[36]   Shepherd was convicted of Class A misdemeanor reckless driving for passing a school bus when its arm signal device was extended causing bodily injury and Level 6 felony criminal recklessness. Shepherd argues that entry of judgment of conviction for both offenses violates prohibitions against double jeopardy under the Indiana Constitution. We review double jeopardy issues *de novo*. *Sullivan v. State*, 77 N.E.3d 187, 192 (Ind. Ct. App. 2017), *trans. denied*.

[37]   Between the time this case was fully briefed by the parties and the rendering of our decision, our supreme court issued *Wadle v. State*, — N.E.3d —, 2020 WL 4782698, (Ind. Aug. 18, 2020), in which it explicitly overruled the "statutory elements" and "actual evidence" tests enunciated in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), the touchstone of Indiana double jeopardy jurisprudence for over twenty years. *Slip op*. at *8. *Wadle* limited the scope of application of Indiana's Double Jeopardy Clause to matters involving successive prosecutions for the same offense. *Id.* at *10. While abolishing the *Richardson* tests and announcing a new analytical framework for double jeopardy analysis based on statutory rather than Indiana constitutional authority, it is our understanding that *Wadle* left Indiana's common law double jeopardy jurisprudence intact. *Id*. (noting the shift away from analysis based on Indiana's Double Jeopardy Clause toward "other sources of protection—statutory, common law, and constitutional.").

[38]   One facet of Indiana's common law double jeopardy jurisprudence prohibits multiple convictions based on the "same act." *Guyton v. State*, 771 N.E.2d

1141, 1143 (Ind. 2002). Regarding Shepherd's reckless driving and criminal recklessness convictions, at sentencing the prosecutor conceded that "basically it is the same act. It is the same victim." (Tr. Vol. IV, p. 191). On appeal, the State acknowledges its concession and reiterates that "both convictions are based on the same act of recklessly driving past the stopped school bus and injuring [M.L.], and both were established by the same evidence." (Appellee's Br. pp. 48-49). Had the State's concessions been based completely on its understanding that Shepherd's dual convictions violated *Richardson*'s "same evidence" test, we would conclude those concessions were no longer valid because, as a new rule of criminal procedure, *Wadle* was potentially applicable to this case. *See Taylor v. State*, 717 N.E.2d 90, 95 (Ind. 1999) (characterizing the then-recent *Richardson* decision as a "new constitutional rule of criminal procedure"); *see also Powell v. State*, 574 N.E.2d 331, 333 (Ind. Ct. App. 1991) (noting that new rules for conducting criminal prosecutions are applied retroactively to cases pending on direct review), *trans. denied*. However, since the State's concessions were also based upon common law double jeopardy principles, we will honor them.

[39] A double jeopardy violation may be remedied by vacating the offense that carries the less-severe criminal penalty. *See*, *e.g.*, *Jenkins v. State*, 726 N.E.2d 268, 271 (Ind. 2000) (holding that Jenkins's convictions for felony murder and robbery violated double jeopardy and choosing to vacate the robbery because it had the less-severe criminal penalty). We therefore vacate Shepherd's Class A

misdemeanor reckless driving conviction, and we leave standing her Level 6 felony criminal recklessness conviction.

## IV. *Driver's License Suspensions*

[40] Shepherd argues that the trial court impermissibly ordered her to serve consecutive driver's license suspensions as part of her sentencing. We review a trial court's non-mandatory suspension of driving privileges for an abuse of its discretion. *Adams v. State*, 960 N.E.2d 793, 796-97 (Ind. 2012). To the extent that resolution of the issue entails an application of a statute, we conduct a *de novo* review. *Id*. at 797.

[41] Shepherd does not contest the trial court's authority to suspend her license or the length of the individual suspensions imposed. Rather, she argues that the trial court lacked the authority to impose those suspensions consecutively, citing Indiana Code section 9-30-16-1(d), which provides that "[m]ultiple suspensions of driving privileges ordered by a court that are part of the same episode of criminal conduct shall be served concurrently." The State does not dispute that, under this section of the traffic code, the trial court lacked the authority to impose consecutive suspensions, but it disputes that the trial court did, in fact, order consecutive suspensions.

[42] At sentencing, the trial court addressed each conviction separately as it rendered its sentence, announcing as part of each individual sentence for Shepherd's reckless homicide convictions that "[t]here will be a three-year license suspension pursuant to IC 9-30-16-2(c)" and, as part of her sentence for

her criminal recklessness conviction, that "[t]here will be a one-year license suspension pursuant to IC 9-30-16-2(a)[(1)]." (Tr. Vol. IV, pp. 200-01). The trial court ordered Shepherd to serve her sentences consecutively, apart from the sentences for her reckless driving and criminal recklessness convictions, which were to be served concurrently to each other but consecutively to the other sentences. While the trial court indicated that Shepherd would serve the portions of her sentence imposed under the criminal statutes consecutively in order to recognize the harm to the four victims, the trial court did not specifically address its reasoning for imposing the suspensions of Shepherd's driving privileges. The trial court's written sentencing order largely tracks its oral sentencing statement and does not specifically address whether Shepherd's license suspensions are to be served concurrently or consecutively.

[43]    The State directs our attention to the fact that, in its written order, the trial court first imposed its term of years on the individual counts and specified whether that term would run concurrently or consecutively to the other terms imposed and that, only after doing so, did the trial court impose the license suspensions. The State urges that we may infer from this ordering that the trial court only intended to impose concurrent suspensions. However, in imposing each individual count, the trial court indicated that each "[s]entence" would run consecutively or concurrently, and a license suspension is undeniably part of each individual sentence imposed. (Appellant's App. Vol. IV, pp. 212-15). Neither are we persuaded by the State's argument that we should infer that the trial court imposed concurrent license suspensions because it used the singular

noun "license suspension" instead of the plural "license suspensions" in its written order providing that it was the "intention of the [c]ourt that [Shepherd's] license suspension be effective on the day she begins probation." (Appellant's App. Vol. IV, p. 215). Individual, consecutive suspensions become one contiguous suspension when executed.

[44] As we have already noted, the State concedes that the trial court did not have the authority to impose consecutive license suspensions. It is not clear from the record before us whether it did so or not. Therefore, we remand with instructions to the trial court to issue a new sentencing order expressly indicating that Shepherd's license suspensions are to be served concurrently.

## CONCLUSION

[45] Based on the foregoing, we conclude that sufficient evidence supported the jury's verdicts and the trial court did not abuse its discretion in rejecting Shepherd's proposed instruction. However, Shepherd's Class A misdemeanor criminal recklessness conviction violated common law double jeopardy principles, and we vacate that conviction. We also conclude that it cannot be discerned from the record before us whether the trial court impermissibly imposed consecutive suspensions of Shepherd's driving privileges, and we remand exclusively for the issuing of a clarified sentencing order that indicates that Shepherd's license suspensions are to be served concurrently.

[46] Affirmed in part, vacated in part, and remanded with instructions.

[47] May, J. and Altice, J. concur